## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA
## PITTSBURGH DIVISION

ANTHONY CARTER,

        Plaintiff,

    vs.

KEVIN M. KRAUS, SHERIFF OF
ALLEGHENY COUNTY;
ALLEGHENY COUNTY SHERIFF'S
OFFICE, ALLEGHENY COUNTY,
DEPUTY JOHN DOE #1, and
DEPUTY JOHN DOE #2,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 2:24-cv-00026

Christopher B. Brown
United States Magistrate Judge

## MEMORANDUM OPINION ON MOTIONS TO DISMISS, ECF NOS. 30 AND 32

**Christopher B. Brown, United States Magistrate Judge**

Pending before the Court are two motions to dismiss the Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6): a motion to dismiss filed by Allegheny County, ECF No. 30, and a motion to dismiss filed by the Allegheny County Sheriff's Office and Sheriff Kevin Kraus (collectively, the "Sheriff's Office"). ECF No. 32. For the reasons below, the motion to dismiss filed by Allegheny County will be granted in its entirety and the motion to dismiss filed by the Sheriff's Office will be granted in part and denied in part.[1]

---

[1]    In accordance with the provisions of 29 U.S.C. § 636(c)(1), Plaintiff and the named and served Defendants have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including trial and the entry of a final judgment. Restricted ECF Nos. 4, 24, and 25. While named and unserved parties generally must also consent for a magistrate judge to exercise jurisdiction based on "consent of the parties" under that statute, *see Burton v. Shamp,* 25 F.4th 198 (3d Cir. 2022) *(*citing with approval *Williams v. King,* 875 F.3d 500 (9th Cir. 2017) and

I.      **Factual Background**[2]

On November 4, 2022, Carter and his ex-girlfriend, Jessica Hooper, were in his vehicle driving on E. Carson Street, Pittsburgh, PA, when Carter noticed a "black vehicle speeding towards" him from behind. ECF No. 28, at 3, ¶1. The vehicle followed Carter for about 2-3 miles before the vehicle activated its lights. *Id*. Carter pulled over and Allegheny County Sheriff Deputy John Doe #1 got out of the black vehicle and approached the driver's side window of Carter's vehicle. *Id*. John Doe #1 told Carter he was stopped "[b]ecause your vehicle's registration was bad." *Id*. According to Carter, this was a "lie because [he] hadn't even had the vehicle for 6 months yet, so there was no way possible [the] vehicle's registration could've been bad." *Id*. Carter gave John Doe #1 the registration and insurance information for his vehicle. *Id*.

As John Doe #1 was running Carter's license, Allegheny County Sheriff Deputy John Doe #2 arrived as backup and approached the passenger side window of Carter's vehicle and started "asking a lot of questions" to both Carter and Hooper. *Id*. ¶2. At some point, Carter "decide[d] to stop answering any and all questions

---

*Coleman v. Lab. & Indus. Rev. Comm'n of Wisconsin*, 860 F.3d 461 (7th Cir. 2017)), this Court is unaware of any decision holding that consent is necessary from defendants who are both unserved and unidentified, such as the Doe defendants here. Courts disregard such defendants in other contexts, including contexts affecting jurisdiction. *See, e.g.*, 28 U.S.C. § 1441(b)(1) (providing that for removal based on diversity of citizenship, "the citizenship of defendants sued under fictitious names shall be disregarded"); *Fat T, Inc. v. Aloha Tower Assocs. Piers 7, 8 & 9*, 172 F.R.D. 411, 414–15 (D. Haw. 1996) (reaching the same conclusion for diversity jurisdiction over cases first filed in federal court). The Court therefore concludes the consent of the unserved Doe defendants here, Deputy John Doe #1 and Deputy John Doe #2 specifically, is unnecessary to proceed under § 636(c).

[2]      Carter's allegations are set forth in the Amended Complaint and are accepted as true with all reasonable inferences drawn in the light most favorable to Tipton. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 237 (3d Cir. 2008).

and invoke[d his] first and fifth amendment rights." *Id.* John Doe #2 "got visibly mad and irritated" and asked Carter why he was invoking his rights. *Id.* Carter replied, "cause I can and I don't have to answer any questions at all, so I'm choosing to not answer any other questions." *Id.* John Doe #2 then stated, "Oh yeah, your really going to regret that, I promise you that" and then walked towards John Doe #1 and the two deputy sheriffs spoke together. *Id.* ¶3.

Both deputy sheriffs then walked back to Carter's vehicle, and John Doe #1 attempted to pull Carter out of the vehicle. *Id.* ¶3. According to the Amended Complaint, John Doe #1 handled Carter "roughly . . . trying to force [Carter] into 1 set of handcuffs when [he] needed 2 sets of handcuffs." *Id.* After Hooper told John Doe #2 that Carter had medical issues, John Doe #2 told John Doe #1 to cuff Carter upfront. *Id.* John Doe #1 then cuffed Carter upfront and told Carter he was being arrested pursuant to an outstanding arrest warrant. *Id.* Carter told John Doe #1 there was "some type of mistake" as there was not an outstanding warrant. *Id.* Carter states, "I knew for sure I didn't have a warrant for anything because I had just talked to my probation officer a few days prior and she didn't tell me to turn myself in or tell me that I had a warrant." *Id.*

John Doe #1 ignored Carter and called for someone to transport Carter to ACJ. *Id.* Carter's request to John Doe #1 for his medicine bag was denied. *Id.* John Doe #1 and John Doe #2 then starting searching Carter's vehicle without his permission. *Id.*

While being transported to ACJ, Carter heard on the police radio "that I was the wrong Anthony Carter; I didn't have a warrant." *Id.* Carter heard one of the officers on the radio ask John Doe #1 to bring Carter his medicine bag, and John Doe #1 refused, telling the officers to tell Carter he would get the medicine bag when he got to ACJ. *Id.*

When Carter arrived at ACJ, he told staff he needed his medication and was told,

> they can't give me anything until I'm in their custody, which I won't be until John Doe #1 has my warrant. So I had to sit and wait in pain and agony, going through withdrawals due to John Doe #1 sending me to ACJ without an warrant and without anyone else intervening and without my medication.

*Id.* ¶4. Although Carter was arrested around 11:30 A.M., he did not see John Doe #1 again until around 6 PM that evening. *Id.* At that time, John Doe #1 asked Carter some questions, including asking for his Social Security number. Carter told him he did not know his Social Security number. John Doe #1 told Carter he "won't be getting anything until I give him my Social Security number" and he left. *Id.*

Carter asked ACJ staff why he had not "gotten thru to the other side of the jail," and was told it was because "I'm about to leave cause I wasn't the person they thought I was." *Id.* Another hour passed before John Doe #1 told Carter he was going to let him go "to look for [his] Social Security card, so he'll know for sure if I'm the right person he's looking for." *Id.*

"After about 10-11 hours, [John Doe #1] tells [Carter] he's going to take me home." *Id.* ¶5. Carter replied he would rather be taken to his vehicle and medicine,

but John Doe #1 said he did not know where the vehicle was because he had given the car keys to Hooper.  *Id*.  John Doe #1 then transported Carter to Carter's friend's house.  Once there, Carter reached Hooper who told him she could not come to get him because "she ended up crashing my vehicle, rendering it undrivable." *Id.*[3]

## II.    Procedural History

As a result of these events, Carter initiated this case on January 8, 2024, by the filing of a Motion for Leave to proceed in forma pauperis ("IFP Motion"), together with a proposed Complaint . ECF No. 1.  His IFP Motion was granted on January 10, 2024, and the Complaint officially filed that day. ECF Nos. 6 and 7.  He seeks relief against Allegheny County, the Allegheny County Sheriff's Office, Sheriff Kevin Kraus, and the two arresting John Doe Sheriff Deputies under 42 U.S.C. § 1983 and various state-law tort theories.

Defendants moved to dismiss the Complaint. ECF Nos. 17 and 20.  Carter was ordered to either file an Omnibus Response or an Amended Complaint. ECF Nos. 22 and 27.  On September 23, 2024, Carter filed an Amended Complaint, ECF No. 28, which remains his operative pleading.[4]

---

[3]      Carter makes similar allegations in another pending lawsuit in this Court.  *See Carter v. Fitzgerald, et al.,* No. 2:23-cv-1913.  In that case, Carter contends he was arrested on February 12, 2022, by a City of Pittsburgh police officer while he was driving his vehicle and, following his arrest, was brought to ACJ, where he was detained until March 18, 2022.  He alleges the police officer gave Carter's car keys to his ex-girlfriend, who stole from his family and crashed his car.  He alleges his constitutional rights were violated by the police officer during his arrest and by ACJ corrections officers and medical personnel during his confinement in ACJ.

[4]      "In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (citations omitted). "Thus, the most recently filed amended complaint becomes the operative pleading." *Id.* (citation omitted).

Carter contends John Doe #1 "knowingly sent [him] to ACJ knowing that I didn't have a warrant, in hopes of finding some drugs and in doing this he violated my constitutional and statutory rights." *Id.* ¶6. According to the Amended Complaint, Carter was forced to "sit and endure through pain and suffering from sitting in jail for almost 12 hours without food and without my medications all because of being falsely arrested and pulled over." *Id.* ¶7.

The Amended Complaint states Allegheny County, Sheriff Kevin M. Kraus, and the Allegheny County Sheriff's Office have "policies, procedures, customs and practices that allows Sheriff's Deputies to falsely arrest and detain innocent citizens and illegally seize and search through their belongings, against their will." *Id.* ¶8.

Carter claims his "1st, 4th, 5th, Due Process Clause, 8th, 13th, 14th Amendments were violated and torts such as negligence, false imprisonment, false arrest, and intentional infliction of emotional distress. Failure to interview, failure to supervise." *Id.* ¶3. See also *id.* ¶4. He seeks injunctive and declaratory relief, compensatory damages "in the amount of $50,000 against each defendant, jointly and severally," and nominal and punitive damages "in the amount of $150,000 against each defendant, jointly and severally." *Id.* at IV, Prayer for Relief, ¶¶9-12.

The Court has federal jurisdiction over the Amended Complaint pursuant to 28 U.S.C. §1331 and can exercise supplemental jurisdiction over the state-law claims under 28 U.S.C. §1337.

Pending before the Court are two motions to dismiss the Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF Nos.

30 and 32.  Despite being granted an extension of time to file an Omnibus Response to these motions, ECF No. 47, to date, Carter has failed to respond.  Although Defendants' motions are unopposed, the Court will address the merits of their arguments because Carter is proceeding *pro se.  Angle v. Smith*, No. 1:22-cv-33, 2023 WL 2873255, *5 (W.D. Pa. Feb. 7, 2023) (internal citations omitted), *report and recommendation adopted*, 2023 WL 2299304 (W.D. Pa. Mar. 1, 2023).  *See also Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) ("The Third Circuit recommends that in the case of a pro se litigant, a district court address a case on the merits even if a motion is unopposed.").

For the below reasons,

- The motion filed by Allegheny County will be granted in its entirety; and

- The motion filed by the Sheriff's Office will be granted in part and denied in part.

## II.    Standard of Review – Fed. R. Civ. P. 12(b)(6)

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well settled.  A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), and can be dismissed for "failure to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  A defendant has the burden of showing that a complaint fails to state a claim.  *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000), *holding modified by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must be dismissed if it merely alleges entitlement to relief without supporting facts.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.'"  *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).  The court need not accept as true "unsupported conclusions and unwarranted inferences[,]" *Doug Grant, Inc. v. Great Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000), nor a plaintiff's "bald assertions" or "legal conclusions."  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  The court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of their claims – not if they will ultimately prevail.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

Finally, because Carter is proceeding *pro se*, the allegations in the Amended Complaint must be held to "less stringent standards than formal pleadings drafted by lawyers[.]"  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  If the Court can reasonably read Carter's Amended Complaint to state a claim upon which relief can be granted, it will do so despite his failure to cite proper legal authority, confusion of legal theories, poor syntax, and sentence construction, or unfamiliarity with pleading requirements.  *See Boag v. MacDougall*, 454 U.S. 364 (1982).  Despite this

leniency, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996)).

With these standards in mind, the Court now turns to Carter's Amended Complaint and Defendants' motions to dismiss.

## III.  Discussion

Carter brings his constitutional claims under 42 U.S.C. § 1983,[5] which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, . . . .

To prevail on a claim under Section 1983, a plaintiff must establish that a defendant, acting under color of state law, deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.[6] 42 U.S.C. § 1983; *see also Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185,189 (3d Cir. 2005). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citations omitted).

---

[5]    Title 42, United States Code, section 1983 "is not a source of substantive rights but a vehicle for vindicating rights conferred by the U.S. Constitution or by federal statute." *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005) (citation omitted).

[6]    No party disputes that all defendants are state actors.

Carter claims Defendants have violated his federal rights under the First, Fourth, Fifth, Eighth, Thirteenth, and Fourteenth Amendments.[7] ECF No. 28, ¶¶ 3, 4.

Allegheny County and the Sheriff's Office each seek to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 30 and 32. The Sheriff's Office also raises a qualified immunity defense on behalf of John Doe #1 and John Doe #2. ECF No. 33 at 8-9. Given the distinct defenses raises by the parties, the Court will address the pending motions in order.

### 1)    Motion to Dismiss Filed by Allegheny County, ECF No. 30

Defendant Allegheny County argues the Amended Complaint makes no specific liability claim against it. Rather, Carter alleges Allegheny County is "legally responsible for actors employed through the county." ECF No. 28, at Section III, ¶4. The only factual allegations in the Amended Complaint relevant to Allegheny County are (1) Carter was taken to ACJ after he was arrested and (2) he was told by jail employees they could not give him medication until they had a warrant from the arresting deputy and he was in their custody. At some point, it

---

[7]    The due process clause under the Fifth Amendment only protects against federal governmental action and does not limit the actions of state or local officials. *See Schweiker v. Wilson*, 450 U.S. 221, 227 (1981*); Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (citing *Riley v. Camp*, 130 F.3d 958, 972 n.19 (11th Cir. 1997)). In other words, a due process claim under the Fifth Amendment only applies to federal officials. *See Bergdoll v. City of York*, 515 F. App'x 165, 170 (3d Cir. 2013) (citing *Nguyen v. U.S. Cath. Conf.*, 719 F.2d 52, 54 (3d Cir. 1983)). Because Carter cannot recover on a § 1983 claim for violation of the Due Process Clause of the Fifth Amendment against any defendant named here, that claim will be dismissed for failure to state a claim. Additionally, the treatment of arrestees and pretrial detainees is governed by the Fourteenth Amendment Due Process Clause and not the Eighth Amendment prohibition on cruel and unusual punishment. *See Wharton v. Danberg*, 854 F.3d 234, 247 (3d Cir. 2017) (citing *Bell v. Wolfish*, 441 U.S. 520, 551 (1979)). Therefore, all claims brought under the Eighth Amendment will be dismissed for failure to state a claim. And while the Amended Complaint states Carter has brought claims under the First and Thirteenth Amendments, there are no factual averments in the Amended Complaint addressing either. Therefore, any claims under the First and Thirteenth Amendment will also be dismissed for failure to state a claim. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

was confirmed Carter was not the subject of an outstanding warrant and he was released from ACJ.

Construed broadly, Carter's allegations may be read to include a claim based on alleged inadequate medical care during his detention in ACJ. Delaying medical care to an individual in police custody can constitute a constitutional violation under § 1983 only if that delay "rises to the level of deliberate indifference to that person's serious medical needs." *Groman v. Twp. of Manalapan*,, 47 F.3d 628, 637 (3d Cir. 1995). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (quoting *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 357 (3d Cir. 1987)) (citation omitted). This standard is in effect a two-pronged test requiring a plaintiff prove: (1) his medical needs were "objectively serious" and (2) defendant exhibited "deliberate indifference" to those needs. *See Monmouth Cnty. Corr. Correctional Inst. Inmates,* 834 F.2d at 346.

As with his initial Complaint, Carter has not plausibly alleged in his Amended Complaint that his medical needs were "objectively serious." He claims only that he needed his medication[8] and was told by an unidentified ACJ staff member he would not be given anything until he was in their custody. ECF No. 28, ¶4. Carter does not allege anyone knew he had a pressing need for medical attention. *See, e.g.*, *Montgomery v. Pinchak*, 294 F.3d 492, 504 (3d Cir. 2002)

---

[8]    The Amended Complaint contains no factual allegations identifying either the name of the medication or why Carter needed the medication.

(explaining that certain medical issues "unlike, for example, broken legs or bullet wounds, do not clearly manifest themselves in ways that are obvious and ascertainable to a lay person.").  All that can be established from the Amended Complaint is Carter told ACJ staff he needed his medicine.  Such an allegation is not enough to state a deliberate indifference to medical care claim.

Additionally, to the extent Carter is attempting to hold Allegheny County liable for the conduct of the Allegheny County Sheriff's Office, the Sheriff, and its deputies, this claim also fails.  As the Honorable William S. Stickman, IV recently explained:

> The County and the Allegheny County Sheriff are legally distinct entities. In Pennsylvania, the office of sheriff is a constitutional one: "[c]ounty officers shall consist of . . . sheriffs. . . ." Pa. Const. art. IX, § 4. Although the Pennsylvania Constitution recognizes the sheriff's office, it does not define its powers. There are two statutory provisions which specifically reference the sheriff's duties. First, sheriffs and deputy sheriffs are required to perform all those duties authorized or imposed on them by statute. 13 P.S. § 40. Second, under the Pennsylvania Judicial Code, "[t]he sheriff, either personally or by deputy, shall serve process and execute orders directed to him pursuant to law." 42 Pa. C.S. § 2921. Thus, the Pennsylvania statutes expressing a sheriff's duties address court-related functions. The sheriff also has common law power and authority to arrest without a warrant for all crimes committed in his presence. *Commonwealth v. Leet*, 641 A.2d 299 (Pa. 1994). The Administrative Code of Allegheny County further specifies that the Allegheny County Sheriff's Office is an "Independently elected County Official[ ]," Allegheny Cty. Admin. Code § 5-201.03, vested with its own powers, duties and responsibilities including the "hiring, supervising and terminating of all personnel within their respective offices," § 5-601.02.  *See also Shim v. Allegheny County, Pa.*, No. 23-393, 2024 WL 1095811, *1 (W.D. Pa. Mar. 13,

2024) (holding that Allegheny County "Sheriff's Office is an 'independently elected County Official[ ],' vested with its own 'powers, duties, and responsibilities,' regarding 'hiring, supervising, and terminating of all [sic] personnel within their respective offices,' not Allegheny County."); *Day v. Westmoreland Cty.*, 2021 WL 5015774, at *6 (W.D. Pa. Oct. 28, 2021) (applying the factors set forth in *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992) and holding, as a matter of law, that the county was not a joint employer based on the Sheriff's Office's statutory authority).[ ]

Plaintiffs have not alleged that the County controlled the daily activities of the Allegheny County Sheriff's Office. Nor could they because <u>the County cannot appoint or remove the sheriff, and it has no ability to overrule his exclusive authority in his employment decisions</u>. Nothing proffered by Plaintiffs vests the County with any meaningful policymaking authority over the Allegheny County Sheriff Office's law enforcement functions.[ ] <u>The sheriff, acting in his law enforcement capacity, is not a policymaker for the County</u>. Plaintiff's respondeat superior theory of liability—i.e., that County is the entity and employer of the Allegheny County Sheriff's Office and therefore responsible for the actions of its deputy sheriffs-is not an appropriate basis for § 1983 municipal liability in this case.

*Bernard v. Ignelzi*, No. 2:23-cv-1463, 2024 WL 424364, at *5-6 (W.D. Pa. Sept. 19, 2024) (emphasis added).

For all these reasons, Allegheny County's motion to dismiss will be granted in its entirety and all claims against Allegheny County will be dismissed with prejudice, as amendment would be futile.

### 2)    Motion to Dismiss Filed by The Sheriff's Office, ECF No. 32

Carter contends he was wrongfully arrested on November 4, 2022, by Sheriff Deputies John Does #1 and #2 and that his wrongful arrest resulted from the

"policies, procedures, customs, and practices" of the Sheriff's Office. ECF No. 28 at 7, ¶8. The Sheriff's Office raises six arguments: *first*, the Amended Complaint fails to state a claim under Fed. R. Civ. P. 8(a)(2); *second*, the claims against Sheriff Kraus fail based on individual liability; *third*, the claims against Sheriff Kraus fail based on supervisor liability; *fourth*, the municipal claims against the Allegheny County Sheriff's Office fail; *fifth*, the official capacity claims against Sheriff Kraus are duplicative of the municipal claims against the Allegheny County Sheriff's Office; and *sixth*, the claims against John Doe #1 and John Doe #2 fail based on qualified immunity.[9] ECF No. 33.

### a) The Sheriff's Office

Carter contends the Sheriff's Office has "policies, procedures, customs and practices that allows Sheriff's Deputies to falsely arrest and detain innocent citizens and illegally seize and search through their belongings, against their will." ECF No. 28, at 8, ¶8. According to the Amended Complaint, pursuant to this policy, around "election time of every year [ ] the defendants ramps up it arrest and pull over rates to keep certain officials in office or to make certain officials look good." *Id*.

Municipal liability under § 1983 may not be proven under a respondeat superior theory of liability but must instead be found on allegations that the government itself supported a violation of constitutional rights. *See Monell v. Dep't*

---

[9]     The Court notes Defendants John Doe #1 and John Doe #2 remain unnamed and unserved and an appearance by counsel on their behalf has not been entered. That said, counsel for the Sheriff's Office has moved to dismiss the Doe Defendants based on a qualified immunity argument.

*of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).  Municipal liability exists only where execution of the municipality's policy or custom, whether made by lawmakers or decisionmakers whose edicts may fairly represent official policy, inflict the injury. *Id*. at 694.

When a plaintiff brings a complaint under *Monell*, the specific offending custom, policy, or practice must be pleaded in the complaint. *See McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) ("To satisfy the pleading standard, [a plaintiff] must identify a custom or policy and specify what exactly that custom or policy was.") (citing *Philips v. Cnty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008)). In addition, a plaintiff must also allege that the policy or custom was the "proximate cause" of his injuries, *see Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)), "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation he alleges. *See id*. (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990)). At the pleading stage, this generally requires some facts that tend to show that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to the injuries in question. *See id*.

In *McTernan v. City of York*, 564 F.3d 636, 659 (3d Cir. 2009), the Court of Appeals for the Third Circuit affirmed dismissal of claims against a municipality because the plaintiff alleged only that he was injured by "the City's policy of ignoring First Amendment right[s]." *Id*. at 658.  Similarly, in *Wood v. Williams*, 568

F. App'x 100, 104 (3d Cir. 2014), the Court of Appeals affirmed dismissal of claims against a municipality because plaintiff alleged only that defendants maintained a "policy and/or custom. . . to inadequately screen during the hiring process and to inadequately train, retrain and/or supervise BAVTS employees . . . thereby failing to adequately discourage Constitutional violations on the part of BAVTS employees." *Wood*, 568 F. App'x at 103 (omissions in original).

Similar to the above cases, Carter's policy or custom allegations are extremely sparse; he asserts the Sheriff's Office has a policy to "ramp up it arrests and pull over rates to keep certain officials in office or to make certain officials look good." ECF No. 28, ¶ 8. Carter offers no additional facts to support his allegations that such a policy or custom existed or that there were any prior similar incidents that would have put policymakers on notice that unlawful conduct was occurring. As a result, the allegations that a policy or custom caused Carter's constitutional violation are too conclusory to state a claim for relief as to the Sheriff's Office (and Sheriff Kraus to the extent he is the alleged policymaker) and the *Monell* claim will be dismissed <u>without prejudice</u> for failure to state a claim for relief.[10]

### b)    Sheriff Kevin Kraus

At the time of the events giving rise to this lawsuit, Kevin Kraus was the Sheriff of Allegheny County. An individual supervisor, such as a sheriff, "may be

---

[10]    Nothing in this decision prevents Carter from seeking discovery on whether John Doe #1 and John Doe #2 acted pursuant to (or in violation of) any policies or customs or whether any prior similar incidents had occurred. If discovery reveals a basis for one or more *Monell* claims, Carter may seek leave to move to amend his Amended Complaint if he can meet the requirements of Rule 15 of the Federal Rules of Civil Procedure.

personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.,* 372 F.3d 572, 586 (3d Cir. 2004). Supervisory liability under Section 1983 is an individual capacity claim against a supervisor. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). Such liability requires a showing of proximate causation, so a plaintiff must "demonstrate a 'plausible nexus' or 'affirmative link' between the [directions] and the specific deprivation of constitutional rights at issue.'" *Santiago*, 629 F.3d at 130 (quoting *Hedges v. Musco*, 204 F.3d 109, 121 (3d Cir. 2000)).

The only factual allegation against Sheriff Kraus is that he is "legally responsible for his deputies and their actions." ECF No. 28, ¶ III(5). But like municipal liability, individual "[l]iability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Carter has not pleaded with any particularity the Sheriff's participation in, or actual knowledge of and acquiescence to, the alleged actions of Defendants John Doe #1 and John Doe #2.[11] Therefore, the motion to dismiss will be granted and all claims against Sheriff Kraus, in his individual capacity, will be dismissed with prejudice, as amendment would be futile.[12]

---

[11]    Given the Court's recommended disposition of Carter's claims against the Sheriff, the Court need not address the alternative argument that the Sheriff is entitled to qualified immunity.

[12]    To the extent Carter attempts to bring a claim against the Sheriff in his official capacity that claim will be dismissed as redundant to the municipal liability claim against the Sheriff's Office. *See*

### c) Sheriff Deputies John Does #1 and #2

The Fourth Amendment to the U.S. Constitution provides:

> The right of the people to be secure in their persons,
> houses, papers, and effects, against unreasonable
> searches and seizures, shall not be violated, and no
> Warrants shall issue, but upon probable cause, supported
> by Oath or affirmation, and particularly describing the
> place to be searched, and the persons or things to be
> seized.

U.S. Const. amend. IV.  "The proper inquiry in a section 1983 claim based on false arrest or misuse of the criminal process is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir.1988); *see Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995).

To prevail on a Fourth Amendment false arrest claim, a plaintiff must show that he or she was arrested without probable cause. *Groman*, 47 F.3d at 634. Probable cause to arrest generally exists when an officer makes an arrest pursuant to a valid warrant. *See Lawson v. Pennsylvania SPCA*, 124 F. Supp. 3d 394, 405 (E.D. Pa. 2015) (citing *Kis v. Cty. of Schuylkill*, 866 F. Supp.1462, 1469 (E.D. Pa. 1994)).  "[A] sheriff executing an arrest warrant is [not] required by the Constitution to investigate independently every claim of innocence, whether the

---

*Hafer v. Melo,* 502 U.S. 21, 25, (1991).  While the Sheriff may be a policymaker under Section 1983, any allegation based on the Sheriff's status as a policymaker is encompassed within the municipal liability claim and cannot be properly categorized as a supervisory liability claim. *A.M. ex rel. J.M.K.,* 372 F.3d at 586.

claim is based on mistaken identity" or otherwise. *Baker v. McCollan*, 443 U.S. 137, 145-46 (1979). Equally clear, however, is that the mere existence of a warrant does not automatically insulate an officer from false arrest liability. *Goodwin v. Conway*, 836 F.3d 321, 327 (3d Cir. 2016) (citing *Wilson v. Russo*, 212 F.3d 781, 786-90 (3d Cir. 2000)). "[A] mistakenly issued or executed warrant cannot provide probable cause for an arrest." *Berg v. Cnty. of Allegheny,* 219 F.3d 261, 270 (3d Cir. 2000) (citing *Arizona v. Evans*, 514 U.S. 1, 13 (1995)). When subsequent events reveal that the person arrested is not the person named in the warrant, the arresting officer may be liable for false arrest. *See, e.g.*, *Thomas v. Middlesex Cty. Sheriff's Dep't*, No. 07-3017, 2007 WL 2306879, at *1, 3-4 (D.N.J. Aug. 8, 2007). The "key question" in misidentification cases is whether the arrest of the wrong person was "reasonable" under the totality of the circumstances. *See Alassani v. Walter*, No. 10-4491, 2011 WL 135018, at *5 (E.D. Pa. Jan. 14, 2011) (citing *McHenry v. Cty. of Delaware*, No. 04-1011, 2005 WL 2789182, at *5 (E.D. Pa. Oct. 24, 2005)); *McHenry*, 2005 WL 2789182, at *5 (collecting cases).

Carter does not argue he was arrested pursuant to a facially invalid arrest warrant; rather, he asserts he was not the person named in the warrant. The Doe Defendants do not dispute this, but they argue they acted reasonably and lawfully: "Said John Does were acting pursuant to the reasonable belief that the Plaintiff was the subject of an outstanding warrant." ECF No. 33, at ¶34. Additionally, the Doe Defendants contend that once it was confirmed the Anthony Carter arrested and

transported to ACJ was, in fact, not the subject of the warrant, John Doe #1 transported Carter to his friend's residence.  *Id.*

Viewed in the light most favorable to Carter, the Court finds the Amended Complaint contains sufficient allegations to suggest the Doe Defendants had reason to doubt Carter was the individual named in the warrant.  According to the Amended Complaint, Carter told John Doe #1 there was a mistake as there was no outstanding warrant for his arrest and the arresting deputies received a radio communication that the Anthony Carter they had arrested was "the wrong Anthony Carter."  Thus, the allegations in the Amended Complaint adequately support an inference that John Doe #1 and John Doe #2 lacked probable cause to arrest Carter.  Any determination that probable cause necessarily existed or that the actions of John Doe #1 and John Doe #2 were reasonable is premature at this point.  For this reason, the motion to dismiss Carter's claims against John Doe #1 and John Doe #2 will be denied.[13]

### 3)    Placeholder for Unknown John Doe #1 and John Doe #2

Carter has a right to service by the United States Marshals Service.  *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).  That said, it is unlikely the Marshals Service could properly serve the Doe Defendants without more precise identifying information, such as a last name, first name, etc.  In circumstances such as these, the Court of Appeals for the Third Circuit seems to have implicitly sanctioned the use of an employer or supervisor as a placeholder for unknown defendants only to

---

[13]    Because Defendants did not address the supplemental state-law tort claims, those will be not be resolved at this time.

assist a pro se plaintiff in obtaining sufficient information to identify defendants to effectuate proper service. *See Wyatt v. Municipality of Commonwealth of Philadelphia*, 718 F. App'x 102, 103-04 (3d Cir. 2017) (recognizing the difficulties presented where a pro se plaintiff could only provide limited information for the United States Marshals Service for purpose of serving the defendants as employees of the City of Philadelphia).[14]

Therefore, in order to ultimately facilitate a more effective attempt at service by the Marshals, the Court finds that the prudent course for the Court to follow at this time is to maintain Kevin Kraus, Sheriff, in his official capacity on behalf of the Sheriff's Office, as a defendant <u>for the limited, and sole purpose,</u> so that the Sheriff's Office may assist Carter in identifying the unnamed John Doe Defendants. At such time as Carter is able to identify the unnamed John Doe Defendants, the Court will dismiss Defendant Kraus as a placeholder for these Defendants.

## IV.    Leave to Amend

The Court must allow amendment by the plaintiff in a civil rights case brought under § 1983 before dismissing under Rule 12(b)(6), irrespective of whether it is requested, unless doing so would be "inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *see also*

---

[14]    The Court recognizes that in *Wyatt* the plaintiff sued the unknown defendants in both their individual and official capacities as City of Philadelphia employees and the Court of Appeals noted the plaintiff effectively sought relief against the City of Philadelphia the City could have attempted to identify the individual defendants. Here, though, it is unclear if Carter has sued the Doe Defendants in both their individual and official capacities, or only in their individual capacities. It is also unclear whether or not the Court of Appeals would have reached the same conclusion in *Wyatt* had the plaintiff in that case not named the unknown defendants in their official capacities. That said, in the interest of justice, this Court will adopt the same approach.

*Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) *abrogated on other grounds by Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  With respect to all claims dismissed with prejudice, namely the claims against Allegheny County and the Sheriff in his individual and official capacities, the Court finds allowing leave to amend here would be futile.

Carter filed his original complaint on January 10, 2024.  Defendants moved to dismiss the Complaint, which placed Carter on notice of deficiencies in his factual allegations.  In response, he filed an Amended Complaint on September 23, 2024, which did not correct the deficiencies.  Further amendment would be futile as Carter has had the opportunity to revise his claims to add any missing averments, but has not done so.  *See Jones v. Unknown D.O.C. Bus Driver & Transportation Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (concluding where inmate-plaintiff "has already had two chances to tell his story," providing "further leave to amend would be futile.").

## V.    Conclusion

For the above reasons, the motion to dismiss filed by Allegheny County, ECF No. 30, will be granted in its entirety and all claims against Allegheny County will be dismissed with prejudice.

The motion to dismiss filed by the Allegheny County Sheriff's Office and Kevin Kraus, Sheriff, ECF No. 32, will be granted in part and denied in part as follows:

- All claims against the Sheriff's Office will be dismissed without prejudice;

- All claims against Sheriff Kraus in his individual capacity will be dismissed with prejudice;

- All claims against Sheriff Kraus in his official capacity will be dismissed with prejudice; and

- The motion will be denied as to all claims against John Doe #1 and John Doe #2.

All claims brought for violations of the First, Fifth, Eighth, and Thirteenth Amendments will be dismissed sua sponte for failure to state a claim. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Kevin Kraus, Sheriff, in his official capacity on behalf of the Sheriff's Office, will remain as a defendant for the limited, and sole purpose, so that the Sheriff's Office may assist Carter in identifying the unnamed John Doe Defendants. At such time as Carter is able to identify the unnamed John Doe Defendants, the Court will dismiss Defendant Kraus as a placeholder for these Defendants.

In sum, the only claims remaining are those claims brought against John Doe #1 and John Doe #2 for alleged violations of Carter's federal rights under the Fourth and Fourteenth amendments and various violations of state-tort law, including, negligence, false arrest / false imprisonment, and intentional infliction of emotional distress. *See* ECF No. 28, ¶¶3, 4.

An appropriate Order follows.

DATED this 25th day of June, 2025.

BY THE COURT:


s/Christopher B. Brown
Christopher B. Brown
United States Magistrate Judge



cc:    ANTHONY CARTER
       QR0011
       SCI CAMP HILL
       P.O. Box 8837
       2500 Lisburn Road
       Camp Hill, PA 17001
       (via U.S. First Class Mail)

       All Counsel of Record
       (via ECF electronic notification)