**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION**

| | | |
|---|---|---|
| ANTHONY CARTER,<br><br>Plaintiff,<br><br>vs.<br><br>ALLEGHENY COUNTY SHERIFF'S OFFICE, SHERIFF JIHOON BAEK, AND SHERIFF DEPUTY SEAN GREEN,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 2:24-cv-00026<br><br>Christopher B. Brown<br>United States Magistrate Judge |

**<u>MEMORANDUM OPINION ON MOTION TO DISMISS THE SECOND AMENDED COMPLAINT, ECF NO. 63</u>**

**Christopher B. Brown, United States Magistrate Judge**

Pending before the Court[1] is the motion to dismiss the Second Amended Complaint, with brief in support, for failure to state a claim under Fed. R. Civ. P. 12(b)(6) filed by the Allegheny County Sheriff's Office, Sheriff Jihoon Baek,[2] and Sheriff Deputy Sean Green. ECF Nos. 63 and 64. Plaintiff, Anthony Carter, filed a brief and response in opposition. ECF No. 72. For the reasons below, the motion to dismiss will be granted in part and denied in part.

---

[1] In accordance with the provisions of 29 U.S.C. § 636(c)(1), Plaintiff and Defendants have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including trial and the entry of a final judgment. ECF Nos. 4, 25, and 66.

[2] According to Defendants, Jihoon Baek is a former deputy. ECF No. 64.

## I. Factual Background[3]

On November 4, 2022, Carter and Jessica Hooper, his then girlfriend, were in his vehicle driving on E. Carson Street, Pittsburgh, PA, when he noticed a black car speeding up behind him. ECF No. 60 at 2. The car followed him for 2-3 miles before Deputy Baek pulled the vehicle over. *Id.* Deputy Baek told Carter his vehicle registration was bad. *Id.* Carter knew "Deputy Baek [was] lying" and showed him the vehicle's registration, which did not expire until June 2023, and his insurance card, which reflected it was paid until December 2022. *Id.*

Carter and Ms. Hooper were waiting in his vehicle, when Defendant Green approached the passenger side door and started asking them both questions. *Id.* At some point, Carter invoked his "Fifth Amendment right[.]" *Id.* Deputy Green "became visibly mad and irritated" and asked Carter why he was invoking his rights. *Id.* Carter replied, "cause I can and I don't have to answer any questions at all, so I'm choosing to not answer any other questions." *Id.* at 2-3. Deputy Green then stated, "Oh yeah, your really going to regret that, I promise you that." *Id.* at 3. Deputy Green then walked towards Deputy Baek and the two deputy sheriffs spoke together. *Id.*

Both deputy sheriffs then returned to Carter's vehicle and Deputy Baek "forcibly extract[ed] the Plaintiff from his vehicle[.]" *Id.* Deputy Baek allegedly

---

[3] Carter's allegations are set forth in the Second Amended Complaint and are accepted as true with all reasonable inferences drawn in the light most favorable to Carter. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 237 (3d Cir. 2008).

handled Carter "roughly" even after being told by Carter and Ms. Hooper that Carter had numerous medical issues and should not be handled that way. *Id.*

Deputy Baek told Carter he was being arrested pursuant to an outstanding arrest warrant. *Id.* Carter informed Deputy Baek this was incorrect as he did not have an outstanding warrant, but Deputy Baek ignored Carter and called for someone to transport Carter to Allegheny County Jail ("ACJ"). *Id.* While awaiting transport to ACJ, Carter heard over the police walkie talkie "that Plaintiff wasn't the Anthony Carter with the warrant." *Id.*

Deputies Baek and Green then starting searching Carter's vehicle without his permission or probable cause. *Id.* Carter requested he be given his medicine bag with his prescribed medication, but the Deputies denied his request. *Id.* According to Carter, he was detained that day in the ACJ for 10-11 hours,[4] and was "forced to sit in pain & agony as a result of not having his medication and going through withdrawal because Deputy Baek refused to give Plaintiff his medication from his vehicle[.]" *Id.* at 3.

Deputy Baek gave Carter's car keys to Ms. Hooper even though she did not have a driver's license and she ended up crashing his car. *Id.* at 4. Carter also alleges Ms. Hooper told him "Defendant Baek said, 'I knew that he wasn't the person that I thought he was but since he had a background for drugs, I figured that he had some because of the way he was acting, so I sent him to jail really to

[4] Defendants argue the records reveal the total event lasted less than 4 hours. ECF No. 64 at 12. But at this early juncture, the Court cannot consider this factual dispute.

search his vehicle.'" *Id*. Carter further contends that in the process of searching his car, the Deputies broke his 60" TV and Ray-Ban sunglasses. *Id*.

**II. Procedural History**

As a result of these events, Carter initiated this case on January 8, 2024, by the filing of a Motion for Leave to proceed in forma pauperis ("IFP Motion"), together with a proposed Complaint . ECF No. 1. His IFP Motion was granted on January 10, 2024, and the Complaint officially filed that day. ECF Nos. 6 and 7. He has amended his complaint twice, with his operative pleading now being the Second Amended Complaint filed on March 9, 2026.[5] ECF No. 60. Named as defendants are the Allegheny County Sheriff's Office and the two arresting Deputies, Jihook Baek and Sean Green. He brings his claims under 42 U.S.C. § 1983 and various state-law tort theories. *Id.*

Carter claims defendants Baek and Green violated his Fourth, Fifth, and Fourteenth Amendment rights. ECF No. 60 at 4. He also brings state tort claims against them for negligence, false arrest, "taking of life, liberty, & peace," and intentional infliction of emotional distress. *Id*. at 4. Carter also appears to be raising a claim against the Allegheny County Sheriff's department for failure to intervene and failure to supervise. *Id*. at 5. As relief, he seeks injunctive and declaratory relief and compensatory and punitive damages. *Id*.

---

[5] "In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (citations omitted). "Thus, the most recently filed amended complaint becomes the operative pleading." *Id.* (citation omitted).

The Court has federal jurisdiction over the Second Amended Complaint under 28 U.S.C. § 1331 and can exercise supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1337.

Defendants have now moved to dismiss the Second Amended Complaint, ECF No. 63, and Carter has responded in opposition. ECF No. 72. The matter is ripe for disposition.

## II. Standard of Review

### A. Rule 12(b)(6) of the Federal Rules of Civil Procedure

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well settled. A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), and can be dismissed for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). A defendant has the burden of showing that a complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000), *holding modified by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must be dismissed if it merely alleges entitlement to relief without supporting facts. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at

the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.'" *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). The court need not accept as true "unsupported conclusions and unwarranted inferences[,]" *Doug Grant, Inc. v. Greate Bay Casino Corp*., 232 F.3d 173, 183–84 (3d Cir. 2000), nor a plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist*., 132 F.3d 902, 906 (3d Cir. 1997). The court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of their claims – not if they will ultimately prevail. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

**2. Qualified Immunity**

The qualified immunity doctrine "shield[s] government officials performing discretionary functions . . . 'from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not a "mere defense to liability" but it is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It is thus important to " 'resolv[e] immunity questions at the earliest possible stage in litigation.'" *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). In considering a claim of qualified immunity, a court must determine both whether the plaintiff has shown a violation of a constitutional right, and whether the right was "clearly established" at the time

of the alleged constitutional violation. *See id*. (discussing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

### 3. Pro Se Pleadings

Although courts must generally construe pro se pleadings liberally under Rule 8(a)(2), courts need not accept legal conclusions disguised as statements of fact, unsupported conclusions, or unwarranted references. *See Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). "[A] pro se complaint must still contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wallace v. Fegan*, 455 F. App'x 137, 139 (3d Cir. 2011) (internal quotation marks and citation omitted). Thus, "pro se litigants still must allege sufficient facts in their complaints to support a claim," and "they cannot flout procedural rules – they must abide by the same rules that apply to all other litigants." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (internal citations omitted).

With these standards in mind, the Court now turns to Carter's Second Amended Complaint and Defendants' motion to dismiss.

## III. Discussion

Carter contends he was wrongfully arrested on November 4, 2022, by Deputies Baek and Green and that his wrongful arrest was a result of the failure of the Allegheny County Sheriff's Office to "train its sheriff deputies in detaining and arresting detainees." ECF No. 60 at 4. Defendants raise four arguments in support of their motion to dismiss: *first*, the Second Amended Complaint fails to state any

constitutional claims; *second*, the constitutional claims against Deputies Baek and Green fail due to qualified immunity; *third*, the municipal claims against the Allegheny County Sheriff's Office fail; and *fourth,* Carter has failed to state a claim for any state tort violation. ECF No. 64.

### A. Claims Against Deputies Baek and Green

Carter brings his constitutional claims pursuant to 42 U.S.C. § 1983, which does not create any substantive rights, but provides a remedy for deprivations of rights created by the Constitution of the United States or federal law. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). Accordingly, "[t]o state a claim for relief in an action brought under § 1983, [a plaintiff] must establish that [he was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). Carter asserts Deputies Baek and Green violated his rights under the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.[6]

Defendants argue Carter (1) has failed to establish "the Deputies acted outside the bounds of the law or committed any violations of the law based on their actions and the information they had at the time of his detention," and (2) the

[6] While Carter also requests damages against Baek and Green for retaliation, ECF No. 60 at 5, there are no separate retaliation claims in the Second Amended Complaint. This is something the parties can flush out during discovery.

claims against the Deputies are barred by qualified immunity. ECF No. 64 at 5-7. The Court will address these arguments in order.

### 1. Fourth Amendment Claims of False Arrest

Carter alleges Deputies Baek and Green lacked probable cause to arrest him. The Fourth Amendment provides "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated." U.S. CONST. AMEND. IV. The false arrest claim against police, that is, the cause of action against police officers for arresting a plaintiff without probable cause, emerges from this right against unreasonable seizures. *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000) ("The Fourth Amendment prohibits arrests without probable cause.") (citing *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995)).

"The proper inquiry in a section 1983 claim based on false arrest or misuse of the criminal process is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988); *see Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995). "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000) (quoting *Orsatti*, 71 F.3d at 482) (internal quotation marks omitted).

"[A] sheriff executing an arrest warrant is [not] required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity" or otherwise. *Baker v. McCollan*, 443 U.S. 137, 145-46 (1979). Equally clear, however, is that the mere existence of a warrant does not automatically insulate an officer from false arrest liability. *Goodwin v. Conway*, 836 F.3d 321, 327 (3d Cir. 2016) (citing *Wilson v. Russo*, 212 F.3d 781, 786-90 (3d Cir. 2000)). "[A] mistakenly issued or executed warrant cannot provide probable cause for an arrest." *Berg,* 219 F.3d at 270 (citing *Arizona v. Evans*, 514 U.S. 1, 13 (1995)). When later events reveal the person arrested is not the person named in the warrant, the arresting officer may be liable for false arrest. *See, e.g.*, *Thomas v. Middlesex Cty. Sheriff's Dep't*, No. 07-3017, 2007 WL 2306879, at *1, 3-4 (D.N.J. Aug. 8, 2007). The "key question" in misidentification cases is whether the arrest of the wrong person was "reasonable" under the totality of the circumstances. *See Alassani v. Walter*, No. 10-4491, 2011 WL 135018, at *5 (E.D. Pa. Jan. 14, 2011) (citing *McHenry v. Cnty. of Delaware*, No. 04-1011, 2005 WL 2789182, at *5 (E.D. Pa. Oct. 24, 2005)); *McHenry*, 2005 WL 2789182, at *5 (collecting cases).

Carter asserts he was not the person named in the warrant. ECF No. 60 at 3. Defendants argue Deputies Baek and Green "were acting based upon information they believed to be true at the time of the arrest." ECF No. 64 at 6. Additionally, Deputies Baek and Green argue:

> Mr. Carter was combative towards Deputies during the entire encounter and refused to cooperate originally and initially refused to provide any proof of identification. Looking at what was reasonable conduct under the

> circumstances at the time, Deputies reasonably believe that the Anthony Carter they detained was in fact the same Anthony Carter who had an outstanding warrant for his arrest and therefore their actions were justified.

*Id*. at 7. Carter tells a much different story and viewed in the light most favorable to him as the Court must do at this stage of the litigation, the Court finds the Second Amended Complaint contains sufficient allegations to suggest the Deputies had reason to doubt Carter was the individual named in the warrant. According to the Second Amended Complaint, Carter told Deputy Baek there was a mistake as there was no outstanding warrant for his arrest and the arresting deputies received a radio communication the Anthony Carter they had arrested was "the wrong Anthony Carter." ECF No. 60 at 3. Thus, the allegations in the Second Amended Complaint adequately support an inference that Deputies Baek and Green lacked probable cause when they arrested Carter. Any determination that probable cause necessarily existed or that the actions of Deputies Baek and Green were reasonable is premature at this point.

Now, turning to Defendants' argument that qualified immunity bars the claims against Deputies Baek and Green. A claim of qualified immunity requires a two-prong inquiry. *Anglemeyer v. Ammons*, 92 F.4th 184, 188 (3d Cir. 2024). The first prong is whether the plaintiff has established the violation of a constitutional right. *Id*. The second prong is whether the constitutional right at issue was clearly established at the time of the defendant's alleged misconduct. *Id*.

The parties dispute whether the Deputies had probable cause to arrest Carter. Because the facts alleged in the Second Amended Complaint do not make it clear whether the Deputies' conduct did *not* violate a constitutional right, dismissal on qualified immunity grounds is premature. *See Thomas v. Indep. Twp.*, 463 F.3d 285, 291 (3d Cir. 2006) (a dismissal based on qualified immunity will be upheld "'only when the immunity is established on the face of the complaint'." (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001))).

### 2. Fifth Amendment Claim[7]

Carter pleads a Fifth Amendment claim. ECF No. 60 at 3. Although it unclear from the Second Amended Complaint what theory he is alleging, Carter in his brief in response to the motion to dismiss, states he was "deprived of life, liberty & property without due process of law." ECF No. 72 at 7. However, the Fifth Amendment restricts the actions of federal officials, not state actors. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002); *Nguyen v. U.S. Cath. Conf.*, 719 F.2d 52, 54 (3d Cir. 1983). Here, Defendants Baek and Green are state actors, not federal officials. Thus, Carter's claim against these Defendants under 42 U.S.C. § 1983 for a violation of the Fifth Amendment must be dismissed. Further, because

---

[7] The Fifth Amendment, made applicable to the States by the Fourteenth Amendment, *Malloy v. Hogan*, 378 U.S. 1 (1964), requires that "[n]o person . . . shall be compelled *in any criminal case* to be a witness against himself[.]" U.S. Const. amend. V (emphasis added). The Court fails to see how Carter can allege a violation of his right against self-incrimination since Carter was never prosecuted for a crime, let alone compelled to be a witness against himself in a criminal case. The Court will, however, review Carter's claim as one under the Due Process Clause of the Fifth Amendment which states "[n]o person . . . shall be . . . deprived of life, liberty, or property without due process of law[.]" *Id.*

permitting an amendment of the claim would be futile, such dismissal will be with prejudice.

### 3. Fourteenth Amendment Claim

The Second Amended Complaint sets out no separate substantive due process claims under the Fourteenth Amendment. But based on a liberal reading of the Second Amended Complaint, Carter may be attempting to raise a substantive due process violation based on his arrest / loss of liberty. As the Supreme Court has made clear, however, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citation omitted). *See also Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."); *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 447-48 (3d Cir. 2020).

Thus, to the extent Carter is attempting to assert an independent Fourteenth Amendment substantive due process claim based on his arrest, that claim is dismissed as duplicative of his Fourth Amendment claim. The dismissal will be with prejudice as amendment would be futile.

**B. Claims Against The Sheriff's Office**

Carter's allegations against the Sheriff's Office are sparse, almost non-existent. The Sheriff's Office is mentioned two times in the Second Amended Complaint: first, under "Parties" where the Sheriff's Office is identified as being responsible for hiring and training Deputies Baek and Green, ECF No. 60 at 1; and second, in the "Relief / Prayer" section where Carter requests an injunction ordering the Sheriff's Office to "immediately change the way [it] train[]s its sheriff deputies in detaining & arresting detainees[,]" and requests compensatory damages for failure to intervene, failure to supervise, and an unidentified "state tort claim." *Id.* at 4-5.

As Carter was advised previously, municipal liability under § 1983 may not be proven under a respondeat superior theory of liability but must instead be found on allegations that the government itself supported a violation of constitutional rights. *See* ECF No. 48 at 13-16 (explaining *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978)). And when a plaintiff brings a claim under *Monell*, the specific offending custom, policy, or practice must be pleaded in the complaint. *See McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) ("To satisfy the pleading standard, [a plaintiff] must identify a custom or policy and specify what exactly that custom or policy was.") (citing *Phillips*, 515 F.3d 224 (3d Cir. 2008)). In addition, a plaintiff must also allege that the policy or custom was the "proximate cause" of his injuries, *see Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)),

"by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation he alleges. *See id.* (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990)). At the pleading stage, this generally requires some facts that tend to show that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, in part, led to the injuries in question. *See id.*

Carter's *Monell* claim in his Amended Complaint was sparse. *See* ECF No. 28. As a result, his claim was dismissed without prejudice. *See* ECF Nos. 48 and 49. He has now amended his complaint, but the Second Amended Complaint fares no better. The Second Amended Complaint contains no facts, none, to show a policy or custom existed or that there were any prior similar incidents that would have put policymakers on notice that unlawful conduct was occurring. Even the most liberal review of the Second Amended Complaint fails to identify any factual averments that concern an official proclamation, policy, or edict issued by a rulemaking entity, *see Beck*, 89 F.3d at 971, or an act taken by the Sheriff's Office that could fairly be interpreted as a policy. *See Santiago*, 629 F.3d at 135 n.11. Nor does the Second Amended Complaint allege a qualifying custom, supported by allegations of permanent, well-settled practices or knowledge and acquiescence in the alleged unconstitutional act. *See Beck,* 89 F.3d at 971. Thus, the Second Amended Complaint fails to state a valid *Monell* cause of action against the Sheriff's Office.

Leave to amend will be denied as further amendment would be futile as Carter has had the opportunity to twice revise his claims to add any missing

averments, but has not done so. *See Jones v. Unknown D.O.C. Bus Driver & Transportation Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (concluding where inmate-plaintiff "has already had two chances to tell his story," providing "further leave to amend would be futile.").

**C. State Tort Claims**

Carter also seeks to bring supplemental claims under Pennsylvania law for false arrest, negligence, and intentional infliction of emotional distress.

**1. False Arrest**

Pennsylvania state law false arrest claims and federal constitutional false arrest claims are co-extensive both as to elements of proof and elements of damages. *Patzig v. O'Neil,* 577 F.2d841, 851 (3d Cir. 1978). "Under Pennsylvania law, a false arrest is defined as 1) an arrest made without probable cause or 2) an arrest made by a person without privilege to do so.'" *Brockington v. City of Phila.*, 354 F. Supp. 2d 563, 572 (E.D. Pa. 2005) (quoting *McGriff v. Vidovich*, 699 A.2d 797, 799 n.3 (Pa. Commw. Ct. 1997)) (citing Pennsylvania Suggested Standard Civil Jury Instructions at 13.04)). Carter alleges he was arrested without probable cause. ECF No. 60 at 3. The Pennsylvania and federal standards for the existence of probable cause are the same. *See Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). As discussed above, the Second Amended Complaint sufficiently alleges Deputies Baek and Green lacked probable cause when they arrested Carter. Thus, the motion to dismiss Carter's state law false arrest claim will be denied.

**2. Negligence**

Under Pennsylvania law, negligence requires a showing of four elements: "(1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) a causal relationship between the breach and the resulting injury suffered by the plaintiff; and (4) actual loss suffered by the plaintiff." *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1126 (Pa. Super. Ct. 2004) (citing *Burman v. Golay & Co., Inc.*, 616 A.2d 657 (Pa. Super. Ct. 1992)). Defendants argue the Deputies did not breach any duty of care because at all relevant times they "were acting in a reasonable and lawful manner within the scope of their duties." ECF No. 64 at 12. Again, for now, the Court concludes Carter has sufficiently pled facts that allege Deputies Baek and Green breached a duty by not acting in a reasonable and lawful manner and arrested him without probable cause. Thus, the motion to dismiss Carter's state law negligence claim will be denied.

**3. Intentional Infliction of Emotional Distress ("IIED")**

Like negligence, a claim for IIED also consists of four elements: "(1) the conduct of defendant was intentional or reckless; (2) the conduct of defendant was extreme and outrageous; (3) defendant's conduct caused emotional distress; and (4) the distress was severe." *Sabo v. UPMC Altoona,* 386 F. Supp. 3d 530, 556 (W.D. Pa. 2019) (citing *Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000)).[8]

[8] Although the Pennsylvania Supreme Court has not explicitly recognized a claim for intentional infliction of emotional distress under Pennsylvania law, the Court of Appeals for the Third Circuit has predicted the Pennsylvania Supreme Court will ultimately recognize this tort. *Pavlik v. Lane Ltd./Tobacco Exporters Int'l*, 135 F.3d 876, 890 (3d Cir. 1998).

The Restatement (Second) of Torts provides guidance as to what constitutes extreme and outrageous conduct:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt.

Restatement (Second) of Torts, § 46, comment d. It is for the court to determine whether the conduct can be regarded as so extreme and outrageous to permit recovery. *Dawson v. Zayre Dep't Stores*, 499 A.2d 648, 649 (Pa. Super. Ct. 1985). Where reasonable minds may differ, it is for the jury to determine whether the conduct is sufficiently extreme and outrageous to result in liability. Restatement (Second) of Torts, § 46, comment h.

Carter contends Deputies Baek and Green did not have probable cause to arrest him, and he was detained for 10-11 hours, during which he was "forced to sit in pain and agony as a result of not having his medication and going through withdrawal[.]" ECF No. 60 at 3. If Carter's allegations are true, then the

allegations of the Second Amended Complaint describe the extreme and outrageous conduct necessary to support IIED claims. Thus, the motion to dismiss the IIED claims will be denied.

## IV. Conclusion

For the above reasons, the motion to dismiss will be granted in part and denied in part as follows:

- The motion will be granted as to the Allegheny County Sheriff's Office and all claims against it will be dismissed with prejudice;
- The motion will be granted as to the Fifth and Fourteenth Amendment claims against Deputies Baek and Green; and
- The motion will be denied as to the Fourth Amendment claim and all state law tort claims against Deputies Baek and Green.

In sum, the following claims against Deputies Baek and Green shall proceed to discovery: The Fourth Amendment claim and the state-law claims of false arrest, negligence, and intentional infliction of emotional distress claims.

An appropriate Order follows.

DATED this 23rd day of September, 2026.

BY THE COURT:

s/Christopher B. Brown
Christopher B. Brown
United States Magistrate Judge

cc: ANTHONY CARTER
QR0011
SCI Fayette
50 Overlook Drive
LaBelle, PA 15450
(via U.S. First Class Mail)

John P. Goodrich
Goodrich & Associates, P.C.
(via ECF electronic notification)